MAX MILLER, APPELLANT, v. MAYOR AND COUNCIL OF CITY OF HOBOKEN ET AL., RESPONDENTS.

Argued November 27, 1916—Decided March 5, 1917.

The board of commissioners of a municipality, relying upon the statement of a bidder for a municipal contract that he had no connection with any other bidder, awarded him a contract for paving. It afterward appeared that he was superintendent of the plant of the only other bidder for the work. *Held*, that the award of the contract was made under a false representation, and will therefore be set aside.

---

On appeal from the Supreme Court.

The Supreme Court upon *certiorari* sustained the award of a municipal contract to William T. S. Crichfield in the following *per curiam:*

"We think the specifications furnished a common standard for bidding. We must assume that the power reserved for the engineer will be fairly exercised and we see no reason to think it is not reserved for the purpose of enabling the engineer to

save the city's money by avoiding such changes of grade as might lead to actions for damages.

"We think the contract contemplated is a single contract for repair work and is not to be regarded as so many separate and distinct contracts for each street.

"Assuming that the contention of the prosecutor is correct, and that Crichfield and the Uvalde company are identical in interest, we would not be justified in setting aside the contract. Upon that assumption; there was but one bidder, and the commissioners might have been justified in rejecting both bids; but they might also in the exercise of their discretion have been justified in awarding the contract. It cannot be said, as a matter of law, that it is improper to award a contract when there is only one bid.

"There must be judgment for the defendants."

The return to the writ supplemented by the evidence taken and the exhibits admitted under a rule in the *certiorari* proceeding established the following facts:

1. That the specifications under which bids were made required that "bids must be made out on blanks furnished at the city clerk's office."

2. That these blanks contained two declarations to be signed by each bidder in the words: "1. I do declare that I am the only person interested in this proposal, and that no other person than myself has any interest in this proposal, or in the contract proposed to be taken. 2. I further declare that this proposal is made without any connection with any other person or persons making proposals for the same work, and is, in all respects, fair and without collusion or fraud."

3. That these declarations were signed by William T. S. Crichfield in the bid proposed by him and by the Uvalde Asphalt Paving Company in the bid proposed by it for the same work.

4. That these were the only bids before the board of commissioners at the time they awarded the contract to Crichfield, whose bid was the lower of the two.

5. That at the time these two bids were signed, and at the time the contract was awarded, Crichfield was the general

superintendent of the Uvalde Asphalt Paving Company under a written contract at an annual salary of $10,000, besides all current expenses incident to his employment and his traveling expenses.

6. That by this contract Crichfield agreed "to give all of his time to the furtherance of the interests of the party of the first part," *i. e.,* the Uvalde paving company, and further that he "shall also in all respects endeavor to promote the success of the company's business."

7. A letter signed by R. S. Rokeby, president, the pertinent language of which is as follows: "My dear Sherman— Referring to your contract with the Uvalde company under date of the 2d of April, 1912. This is to confirm the verbal understanding you and I have. You are at liberty to bid on and undertake asphalt paving contracts in your name and in your own behalf on the following conditions," which are for the present purposes unimportant.

There was also a general denial by Crichfield of any secret understanding with the company of which he was superintendent as to their respective bids for the contract in question, or that the company had any interest in such contract.

For the appellant, *J. Emil Walscheid.*

For the respondents, *John J. Fallon* and *Collins & Corbin.*

The opinion of the court was delivered by

GARRISON, J. Doubtlessly, the commissioners, as suggested by the court below, would have been justified in rejecting both bids because of the intimate connection between the two bidders. The trouble is that they did not know of such connection when they awarded the contract, in reliance upon the declarations of both bidders that there was no connection between them.

I am not referring to the first declaration, which covered joint interest in the bid and the contract when awarded, but to the second declaration which dealt with the bidders themselves by declaring that there was no connection between

them,. whereas the fact was that one was the general superintendent of the other. This anomalous situation is not .explained away either upon the theory that the company did want the contract or that it did not want it; if the former, why did it encouarge the competition of its own manager? If the latter, why did it bid at all?

The atmosphere of suspicion that could not but be created by the disclosure of the real facts, coupled with the disingenuous character of the declarations made by both bidders would have justified the rejection of both bids or at least the serious consideration by the commissioners of the propriety of taking such a course "in the best interests of the city." Of the benefit of this exercise of discretion by the commissioners the city was entirely deprived by the circumstance that the discrepancy between the declared facts and the actual facts was not known to the commissioners when they awarded the contract.

In addition to this detriment the award of the contract, under the circumstances, was for the same reason detrimental in so far as it necessarily rested upon false and misleading information both as to the fact of independent competition and as to the fallacious standard set up as to the lower of the two apparently competitive bids.

Apart from the public detriment presumably resulting from the false impressions under which the contract was awarded to Crichfield, such award should be set aside upon a ground directly affecting him. Crichfield knew what his connection with his company was; he knew also that he had declared that there was no connection between them; he knew, therefore, that in acting upon the faith of his declaration the commissioners would necessarily act under a false impression as to the actual facts. They did so act in awarding the contract to him. The doctrine applicable to such a situation is thus stated by this court in the case of *Lomerson* v. *Johnston*, 47 N. J. Eq. 312: "In order to establish a case of false representation it is not necessary that something which is false should have been stated as if it were true. If the presentation of that which is true creates an impression which is false,

it is, as to him who, seeing the misapprehension, seeks to profit by it, a case of false representation."

Under this doctrine Crichfield cannot retain the contract awarded to him under a misapprehension of which he was cognizant without committing this court to an approval of an entirely indefensible practice.

The judgment by the Supreme Court is reversed and the award of the contract set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 11.