"distinguish and divide a hair 'twixt south and southwest side," may be able satisfactorily to mark the difference, but we cannot.

The application for rehearing is denied.

*Rehearing denied.*

WILLIAMS and RICHARDS, JJ., concur.

POWERS, A TAXPAYER, *v.* CITY OF CINCINNATI ET AL.

(Decided May 15, 1933.)

*Mr. Truman A. Herron,* for plaintiff in error.

*Mr. John D. Ellis,* city solicitor, and *Mr. Henry Bruestle,* for the City of Cincinnati and Clarence A. Dykstra.

*Messrs. Maxwell & Ramsey* and *Mr. Gregor B. Moormann,* for Winston Brothers Company.

*Messrs. Dolle, O'Donnell & Cash, amicus curiæ.*

Ross, J. This matter is presented to this court on appeal from a judgment of the court of common pleas of Hamilton county.

The original action was one to enjoin the letting of a contract for the construction of a sewer for the city of Cincinnati.

The contract having been entered into immediately after rendition of the judgment below, the action, by amendment, is directed to enjoin the city from furthur proceeding under such contract.

The matter was presented to this court upon the record below and additional testimony heard by this court.

The preliminary question presented, and the only one for immediate decision, involves a claim by the plaintiff, Edgar M. Powers, a taxpayer, that the affidavit filed by the successful bidder contained a statement pursuant to statutory requirement giving the

names of all interested in the bid; that such statement was to the effect that no person other than the bidder was interested in the bid, and that the fact is that George W. Wade was so interested, in that he had a verbal agreement with the bidder providing for employment as superintendent of works upon the job at a fixed salary, and an additional compensation of 17½ per cent. of the net profits. Section 4329, General Code, provides as follows: "The bids shall be opened at twelve o'clock noon, on the last day for filing them by the director of public service and publicly read by him. Each bid shall contain the full names of every person or company interested in it, and shall be accompanied by a sufficient bond or certified check on a solvent bank, that if the bid is accepted a contract will be entered into and the performance of it properly secured. If the work bid for embraces both labor and material, they shall be separately stated with the price thereof. The director may reject any and all bids. Where there is reason to believe there is collusion or combination among bidders, the bids of those concerned therein shall be rejected."

The affidavit stated that no one other than the bidder had any interest in the contract.

Pertinent evidence in the record follows:

James M. Winston testified:

"Q. When was Mr. Wade employed by your Company? A. Officially?

"Q. Officially? A. Or verbally, which.

"Q. Both? A. Verbally prior to the middle of February, but officially about a week or two ago, about a week or ten days ago. * * * I told him he was going to be connected with us, and by connection I meant employee.

"Q. You told him he was going to be connected with you? A. Yes.

"Q. Didn't you tell him you had arranged with

Wade to take care of the sewer end of this work in some capacity? A. Yes.

"Q. If Mr. Root says 'to handle and supervise the contract' is that correct? A. Supervise the contract?

"Q. Yes? A. Well, I think it is a little misleading in that statement.

"Q. You think he was misleading when he said that? A. Yes, because I am going to supervise this work myself. At least I intend to.

"Q. That is if you get it? A. Of course that is understood.

"Q. But this was on March 3rd, and I want particularly to know the language you used to Mr. Root with reference to Wade's connection with this contract? A. I can't recall my language.

"Q. What is your independent recollection now of the verbal arrangement you made with Mr. Wade? A. We employed Mr. Wade on a salary to go on the pay roll the same as any other employee.

"Q. That is your recollection of the verbal arrangement which you had with Wade prior to your coming to see Mr. Root on Friday, March 3rd? A. Yes.

"Q. That he was to be employed merely as an employee on a stipulated salary? A. Well we did not come to any definite terms as to what rate of pay we were going to give him.

"Mr. Moorman: I object to any inquiry as to what this Company was going to pay Mr. Wade in this case.

"The Court: He has not been asked that yet.

"Mr. Moorman: I take it this is preliminary to this question.

"A. I have consented to tell this information to the Court only.

"Q. What tentative arrangement did you make with Wade with reference to his duties, what he was to do in connection with this contract if awarded to you? A. We were going to have him go out and superin-

tend, or as you may put it, a general foreman, in the construction of this sewer, to go out in it and help build it and supervise men in the general construction as he saw fit.

"Q. The pay was not agreed upon at that time, did I understand you to say? A. No. Not at first; I don't think, no. That day before March first, yes.

"Q. I am speaking of March 3rd. Now on March 3rd, had you and Mr. Wade agreed on the terms of his compensation? A. Yes.

"Q. When was that agreed upon? A. Oh, I think a week or ten days before that date.

"Q. Please state what that was to be? A. I have told you I did not want to tell that. I will give that to the Court. * * * One Hundred and Fifty Dollars a month, plus a bonus on a percentage of the profits if there be any.

"Q. Is that confirmed by correspondence? A. Yes, sir, and signed, and written in the shape of a letter and signed as accepted by Mr. Wade."

Testimony of George W. Wade:

"Q. You did not see him sign it? A. No, sir.

"Q. Who lodged the bid at the City Hall? A. I did. Mr. Winston and I were walking through the hall together and I put it in the receiving box in the outer room on March First.

"Q. What time? A. About eleven-fifty.

"Q. And the bids were closed, or were to be opened at twelve o'clock? A. Yes, sir.

"Q. Your arrangement had been made then with Winston Brothers, had it not? A. A tentative one.

"Q. The same as this indicated in your proposal? A. Exactly.

"Q. They accepted your proposition? A. Yes, sir. * * *

"Q. Now at the time you lodged that bid you had an arrangement with Winston Brothers Company under the terms of which you were to get a certain salary

if they were awarded the contract? A. A verbal one, yes, sir.

"Q. And in addition to the salary, you knew on March First, that if Winston Brothers were awarded the contract, you were to get a percentage of the profits that were made? A. At that time they verbally discussed that they would give a bonus depending on the outcome of the work.

"Q. Didn't you in January, have a tentative arrangement, on January 31st, which was the terms of your proposal written on that day, to-wit, a salary of $———— and a percent of ...... %? A. Yes, we had a verbal understanding that my written proposal of January 31st, had been accepted."

This verbal agreement was the subject of a formal offer and acceptance incorporated in a writing under date of March 9, 1933, and accepted March 18, 1933:

"Winston Bros. Company,
"Minneapolis, Minn.

"Mr. George W. Wade,
"Cin'ti, O., March 9, 1933.

"Confirming my understanding with you, which is as follows, commencing with the date of official award you are to be put on the job payroll and receive $150 per month, which is to be chargeable to the job, until it is completed, accepted by the city, the books closed, and our profits or loss absolutely known. In addition to the above salary you are to receive 17½% of the net profits, the net profits, if any, based upon the final figures after the work is completed and accepted and the books finally closed. We reserve the right to require of you, at our expense (said expense not to be charged to the job), and you agree to furnish, a surety bond in the amount of $10,000.00 in our favor, covering your performance in connection with the job, which is understood shall be continuous and in charge of field operations until the completion of the job, sub-

ject of course to removal by us for cause. Mr. J. M. Winston will be our Agent with whom you will confer and to whom you will report.

"We are very pleased over this opportunity to work with you and we sincerely hope that the job will be profitable for all concerned. If this letter agreement is satisfactory to you, please so indicate by signing under the word 'accepted', as provided below.

"Yours very truly

"Winston Bros. Company

"By F. H. Halladay, Vice President.

"Accepted:

"George W. Wade

"March 18th, 1933."

This executed written agreement was in exact conformity to an offer made by Wade to the Winston Bros. Company January 31, 1933.

The bids were opened March 1, 1933, and the award made March 8, 1933. There can be no question, therefore, that at the time the bid was filed, March 1, 1933, accompanied by the affidavit, Wade had a binding agreement with the Winston Bros. Company that in the event of the award of the contract to it he was to supervise its work under the contract, as an employee, and for a salary and additional compensation consisting of a percentage of the net profits.

We think it conceded, or, if not, we think it clear, that the provisions of Section 4329, General Code, are mandatory and cannot be waived by the officers of the city. With the reasons for, or wisdom of, the provisions, we have no concern. Such matters are for legislative consideration.

If, therefore, Wade was a person "interested in it," the bid, his full name must appear in the bid and be designated as such interested party.

If he was so interested, and his name not having

been set out, the prayer of the plaintiff must be granted.

The question then presented is: Was Wade interested in the bid within the meaning of the language used by the Legislature? It is obvious that some limitation must be placed upon a possibly wide interpretation of the words "interested in." Many persons could conceivably be interested in seeing the award made to the bidder in question. Prospective subcontractors, materialmen, employees, even the families of those profiting by the activity of the corporation, all would be interested in seeing the award made to the bidder. Obviously these are not intended to come within the mandate of the statute.

Reference to the authorities cited by all counsel interested in the case as well as other authorities of similar import are of little service in reaching a conclusion upon this point. No specific, definite, controlling authority has been found. It seems reasonable, however, to conclude that the interest intended is required to be definite, direct, financial interest, and of such a character as to vest in the interested party an enforceable right contingent upon the award. We do not consider controlling the fact that a portion of the compensation was in the form of a commission. The same effect would be produced if a fixed salary only was involved, and the employment made contingent upon the awarding of the bid.

While the terms of the employment, whether fixed or contingent on profits, might be interesting and possibly controlling as far as action was concerned by the awarding authority, we do not consider this feature determinative of the presence or absence of interest. Interest in the profits must be distinguished from interest in the bid. A salary much larger than a contingent commission would certainly not change the principle involved.

We consider a fair determination of the matter to

be that, if at the time the bid is filed the bidder has a definite and binding agreement with any one whereby his employment, enrichment, or possible profit (whether he be subcontractor, materialman, or employee) is made contingent upon the award of the bid, then such person, regardless of who he may be or the nature of his contemplated consideration for such contingent compensation, is a party or person interested in the bid, and his name must be set out in full for the advice and consideration of the awarding authorities, and for the information of the public, which is entitled to know the basis upon which such award is made.

The formal offer and acceptance as shown by the evidence quoted hereinbefore contain the enforceable agreement between the parties, in effect before the filing of the bid.

Some stress has been laid upon the case of *Breslin* v. *Brown*, 24 Ohio St., 565, 15 Am. Rep., 627, by the city, and successful bidder. An examination of this authority shows that it, like the other authorities, is of no determinative value. The point decided in that case was that an agreement between concurrent bidders to form a partnership upon an award to either was an enforceable contract, not against public policy. This would be an authority for enforcing Wade's contract, but certainly not an authority for holding that in such an action as is here considered the unsuccessful contracting bidder would not have such an interest in the successful bid as to require conformance with the statute.

One authority has been considered by the court, which, while obviously not controlling, is of some help in justifying the conclusion reached. We refer to *State, ex rel. Crabbe, Atty. Genl.*, v. *Municipal Savings & Loan Co.*, 111 Ohio St., 178, 144 N. E., 736, the first paragraph of the syllabus of which is: "Trustees of a corporation appointed by the directors of the cor-

poration pursuant to Section 11972, General Code, are employes of the corporation and hence are 'persons interested' in an action for dissolution of the corporation.''

The authorities, *Gophier Diamond Co.* v. *Wood*, [1902], 1 Ch., 950, and *Miller* v. *City of Hoboken*, 90 N. J. Law, 167, 100 A., 216, cited by plaintiff, are also in accord with our conclusions herein.

Our conclusion therefore is that the provisions of Section 4329, General Code, requiring the statement of the full names of any one interested in the bid, are mandatory, and cannot be waived by the awarding authority, and that, it being made to appear by a taxpayer that a binding contract existed between the successful bidder and another by which the latter was to receive compensation made contingent upon the award, such other person had such an interest in the bid as to require that his name be given in full in the bid, and that performance under a contract awarded upon a bid not so conforming to the statute must be enjoined.

*Decree accordingly.*

HAMILTON, P. J., and CUSHING, J., concur.